UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
DEC 2 0 2007
DEC 20, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. |
| FUNDS IN THE AMOUNT OF FORTY-TWO THOUSAND DOLLARS ($42,000.00); and | ) ) ) ) | 07cv7147 JUDGE GETTLEMAN MAG JUDGE KEYS |
| FUNDS IN THE AMOUNT OF ONE HUNDRED THIRTY-EIGHT THOUSAND, FIVE HUNDRED AND FORTY DOLLARS ($138,540), | ) ) ) ) ) ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

### VERIFIED COMPLAINT FOR FORFEITURE

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant property alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

#### COUNT ONE

1. This complaint for forfeiture is verified by the attached affidavit of Task Force Officer Geoffrey Gibbs of the United States Drug Enforcement Administration ("DEA"), which is fully incorporated herein.

#### Jurisdiction and Venue

2. This is an *in rem* forfeiture action brought pursuant to Title 21, United States Code,

Section 881(a)(6), for forfeiture of funds in the amounts of forty-two thousand dollars ($42,000) and one hundred thirty-eight thousand, five hundred forty dollars ($138,540), which funds were furnished and intended to be furnished in exchange for a controlled substance, are the proceeds from the sale of a controlled substance, and were monies used and intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 801, *et seq.* This court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345 and 1355(a).

3. This court has *in rem* jurisdiction over the defendant property pursuant to Title 28, United States Code, Sections 1355(b)(1)(A) and (d), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

4. Venue is proper under 28 U.S.C. § 1395(b) because the defendant funds were found and seized within the Northern District of Illinois on July 31, 2007, and shall remain here during the pendency of this action.

**Statutory Authority**

5. This forfeiture action *in rem* is brought pursuant to Title 21, United States Code, Section 881(a)(6).

**Specific Allegations**

6. On July 31, 2007, DEA agents assigned to the DEA Narcotic Transportation Task Force Group at Amtrak Union Station in Chicago, Illinois, developed information that Levon Vardapetyan ("Vardapetyan"), Grayr Demirtchyan ("Demirtchyan") and two other subjects purchased one-way coach class train tickets on July 27, 2007 with cash for travel from Orlando, Florida to Chicago, Illinois on July 29, 2007. Upon their arrival in Chicago, Vardapetyan and Demirtchyan purchased one-way first class sleeping car tickets with cash for travel on July 31, 2007,

to Los Angeles, California.

7. At approximately 2:25 p.m., DEA law enforcement officers approached Vardapetyan and Demirtchyan, who were seated in the first class lounge of the station with two additional subjects. Agents requested an interview with all four subjects, to which all four subjects verbally consented. After explaining that they were not under arrest, agents requested to see each of the subjects' identification and train tickets. Each of the four subjects produced a California driver's license bearing his/her respective likeness, as well as their train tickets.

8. Agents then asked the four subjects to identify the pieces of luggage that belonged to each of them. Demirtchyan identified a red Marlboro duffle bag as belonging to him, and Vardapetyan identified a black Olympia brand roller type bag as belonging to him. When agents asked if any of the four subjects were in possession of any weapons, Vardapetyan stated that they had brass knuckles but did not identify specifically who had the brass knuckles. Each subject replied that he/she was not in possession of any illegal narcotics. Vardapetyan admitted that he was carrying large amounts of cash.

9. Each of the four subjects gave verbal consent to search their individual pieces of luggage. While agents checked the luggage, Vardapetyan admitted to having $100,000 in cash. Agents asked Vardapetyan if he had any paperwork for the money. Vardapetryn said he did not and that he was possession of it because he had sold a restaurant in Russia. Agents found a large amount of U.S. currency inside the black Olympia brand roller bag belonging to Vardapetyan, as well as three expandable batons and two sets of brass knuckles.

10. DEA agents asked the four subjects to accompany the agents to their office in Union Station, advising all four subjects that they were not under arrest. All four subjects agreed to

accompany the agents to the office in the Union Station. Once inside the office, each of the four subjects signed a waiver of rights form and consented to be interviewed. Vardapetyan and Demirtchyan also gave written consent to search their bags. In the black Olympia roller type bag belonging to Vardapetyan, agents discovered a total of $138,540 in U.S. currency, packaged in forty (40) bundles wrapped with a purple band, one (1) loose bundle, two (2) bundles of U.S. currency wrapped with a yellow band, and two (2) gallon size clear plastic Ziploc bags. In the red Marlboro duffle bag belonging to Demirtchyan, agents located a total of $42,000 in U.S. currency, packaged in twenty (20) bundles wrapped with a purple band, and two (2) bundles of U.S. currency wrapped with a yellow band.

11.　　Agents asked Vardapetyan how he came into possession of the currency. Vardapetyan explained that he sold his "sandwich shop" restaurant in Russia for $195,000 on March 9, 2007 to a person he would only identify as "Misha," and that the currency was brought from Russia to Orlando, Florida by Misha's friend who Vardapetyan only would identify as "Alex." Vardapetyan also told the agents that he had owned his restaurant for seven years and was a manager for a limousine company but has been unemployed for the last two months. Vardapetyan stated that Demirtchyan was in possession of some of the currency because it would not all fit in his own bag.

12.　　Special Agent Robert Glynn ("SA Glynn") responded with his canine "Rudy" and conducted a narcotic odor investigation on the currency. SA Glynn advised that "Rudy" gave a positive alert for the presumptive presence of narcotic odor on the seized currency. Narcotic detector dog "Rudy" is owned by the DEA and was last certified in February 2007. The DEA certifies narcotic detector dogs every twelve months. "Rudy" has made over 50 narcotic finds on currency. "Rudy" has had no false positives and has had several instances of no detection.

13. The currency denominations for the seized currency are as follows: two thousand and fifty (2,050) twenty dollar bills and one hundred (100) ten dollar bills for a total of $42,000 found in the bag belonging to Demirtchyan, and twenty-eight (28) one hundred dollar bills, six thousand six hundred and thirty-seven (6,637) twenty dollar bills and three hundred (300) ten dollar bills for a total of $138,540 found in the bag belonging to Vardapetyan.

14. For the reasons stated herein and in the attached affidavit, there is probable cause to believe that funds in the amounts of forty two thousand ($42,000.00), contained in a red Marlboro duffle bag seized from Grayr Demirtchyan on July 31, 2007 were furnished and intended to be furnished in exchange for a controlled substance, are the proceeds from the sale of a controlled substance, and were used or intended to be used to facilitate a violation of the Controlled substances Act, 21 U.S.C. § 801, *et seq.*, and are therefore subject to forfeiture and condemnation pursuant to 21 U.S.C. § 881 (a)(6).

WHEREFORE, the United States of America requests:

A. That the defendant property be proceeded against for forfeiture and condemnation, that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

B. That the court adjudge and decree that the defendant currency be forfeit to the United States and disposed of according to law; and

C. That any trial relating to the forfeiture of these funds be before a jury.

## COUNT TWO

1. Paragraphs One through Thirteen are incorporated as if fully set forth herein.

2. For the reasons stated herein and in the attached affidavit, there is probable cause to believe that funds in the amounts of one hundred thirty eight thousand, five hundred forty dollars ($138,540), contained in a black Olympia roller type bag seized from Levon Vardapetyan, were furnished and intended to be furnished in exchange for a controlled substance, are the proceeds from the sale of a controlled substance, and were used or intended to be used to facilitate a violation of the Controlled substances Act, 21 U.S.C. § 801, *et seq.*, and are therefore subject to forfeiture and condemnation pursuant to 21 U.S.C. § 881 (a)(6).

WHEREFORE, the United States of America requests:

A. That the defendant property be proceeded against for forfeiture and condemnation, that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

B. That the court adjudge and decree that the defendant currency be forfeit to the United States and disposed of according to law; and

C. That any trial relating to the forfeiture of these funds be before a jury.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: *[signature]*
MADELEINE S. MURPHY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-2070

State of Illinois        )
                         )    SS
County of Cook           )

## AFFIDAVIT

I, Geoffery Gibbs, having first been duly sworn, upon oath, deposes and states as follows:

1. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), Airport Interdiction Group. I have been assigned as a TFO for DEA since approximately 1997. I have been specifically assigned to the Airport Interdiction Group for approximately three and half years, and my official duties and responsibilities include the investigation of narcotics trafficking and narcotics-related offenses at the various points of entry and exit in Chicago, including O'Hare Airport, Midway Airport, the Greyhound Bus Terminal, and Union Station.

2. As a DEA TFO, I am an investigative and law enforcement officer of the United States, permitted by law to conduct investigations of, and to make arrests for, offenses enumerated in the Comprehensive Drug Abuse Prevention and Controlled Substances Act of 1970, Title 21, United States Code, Section 801, *et seq*.

3. I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief based upon my own personal knowledge as well as information I have received from other agents, persons and documents. Because this affidavit is for a limited purpose it does not include each and every fact known to me concerning this investigation.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 20 th of December 2007, in Chicago, Illinois.

GEOFFERY GIBBS
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this 20th day of December 2007.

NOTARY PUBLIC

"OFFICIAL SEAL"
Barbara Robertson
Notary Public, State of Illinois
My Commission Exp. 12/26/2007